**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION**


**WILLIAM JOHN HALE,**

   **Plaintiff,**

**vs.**                                                **CASE NO. 5:04CV123-SPM/AK**

**CAPT. HOWARD RIGGINS, et al,**

   **Defendants.**

_____/


## REPORT AND RECOMMENDATION

This cause was remanded by the Court of Appeals for the Eleventh Circuit to address one claim raised in the complaint, Plaintiff's claim that he was issued a disciplinary report on July 26, 2002, in retaliation for filing grievances.  (Doc. 42).  The court of appeals affirmed the district court's decision to dismiss all other claims raised in the complaint that concerned nine other disciplinary reports and directed that the district court allow Plaintiff to amend his complaint to pursue this claim only.  (Doc. 42).  The court of appeals specifically narrowed their holding to allow for *pursuit* of this claim, declining to consider the merits of the claim.  (Doc. 42, p. 5  n.3).  A second amended complaint was filed on November 13, 2006, (doc. 60), and service was directed on November 15, 2006.  (Doc. 62).  A second service order finally resulted in execution of service on the two defendants (docs. 66, 70, 76), and a special report was filed (doc. 81), and construed as a motion for summary judgment on April 25, 2007.  (Doc. 83).

An extended discovery period was granted to Plaintiff and numerous motions

concerning discovery were filed and decided, including service of relevant deposition

questions on a number of persons throughout the corrections system  See Docket

History from Doc. 83 through Doc. 123.  Plaintiff has filed several responses to the

motion for summary judgment which have been considered in deciding this motion.

(Docs. 104, 113, 124).

**I.      Second Amended Complaint (doc. 60)**

Plaintiff complains that he has spent 10 1/2 months on disciplinary confinement

as a result of several falsified disciplinary reports written by Defendant Riggins and

others at his behest.  He describes the restrictions imposed by being on disciplinary

confinement, which he contends is an atypical hardship upon him.[1]  He also contends

that the number of disciplinary reports made him "eligible" for close management, which

he also describes in great detail and complains is also an atypical hardship, and which

he endured for 1 and 1/2 years after a shank was planted in his property.

The incident and subsequent DR at issue began with a new policy at Washington

CI that allowed inmates one roll of toilet paper per week.  Plaintiff claims that some staff

members were giving him paper towels to wipe the toilet seat in addition to the one roll

of toilet paper, but Defendant Riggins wrote a memo prohibiting them from doing this.

Plaintiff wrote a grievance on Defendant Riggins about this and was called to Riggins'

office on February 19, 2002.  Allegedly Riggins told Plaintiff he was going to put him

---

[1]  Plaintiff uses this language from Sandin v. Conner, 515 U.S. 472, 484 (1995),
which held that close confinement and disciplinary segregation is **not** an "atypical and
significant hardship... in relation to ordinary incidents of prison life." (emphasis added).

**No. 5:04cv123-SPM/AK**

somewhere where Riggins would not have to worry about him, and wrote a false DR about this incident saying that plaintiff had been disorderly.  Allegedly Riggins prompted 8 of his friends to write DR's on Plaintiff and ultimately planted a shank on him, which was discovered in his property on July 31, 2002, and resulted in him being sent to disciplinary confinement and then CM–the "somewhere" Riggins had referred to in his threat in February.  Plaintiff claims that he was placed on CM status on August 7, 2002, then transferred to South Florida Reception Center on August 14, 2002 on suicide observation and then to Florida State Prison on October 25, 2002, again on suicide observation.  He was placed on disciplinary confinement until February 1, 2003, and then CM until June 30, 2005.

The DR at issue was actually written by Defendant Sellers, allegedly in conspiracy with Defendant Riggins, and in retaliation for the grievance concerning the toilet paper issue.  Plaintiff contends that the DR written by Sellers was overturned on a technicality according to the grievance response, but it is obvious to Plaintiff that it was overturned because it was fabricated.

Plaintiff states that prior to the conspiracy instigated by Riggins he had been DR free for a year and a half, then for three years after the incident.

Plaintiff claims that Defendants have violated his First, Fifth, Eighth and Fourteenth Amendment rights; specifically, his first amendment right to access the courts, his fifth and fourteenth due process and equal protection rights, as well as the right to be free of cruel and unusual punishment, i.e. deliberate indifference to his serious medical needs.  He seeks nominal, punitive, and compensatory damages

**No. 5:04cv123-SPM/AK**

against Defendant Riggins for $225,000.00 and against Defendant Sellers for $50,000.00.  He also wants criminal charges brought against both Defendants.

a)   Request for Administrative Remedy dated May 4, 2003 (exhibit A)

The request is made to the Warden and concerns Plaintiff's allegations that Defendant Riggins came to his door and congratulated Plaintiff on making CM.  Hale was accused of telling Defendant Sellers that he "was going to put a piece of steel through Sellers' ass."  This statement was "a precursor to the fabrication D.R. of Hale possessing a knife."  Plaintiff described the "knife" as a toothbrush with two razors melted into its head and could not have been stuck into anyone, but could cut someone up. He contends that if he actually threatened someone with this "knife" he would have said he was going to slice someone up, not run them through. This discrepancy, Plaintiff contends, supports his contention that the DR was fabricated, as well as the alleged use of profanity described in the DR, since he does not use such language.  Plaintiff also suggests that evidence of harassment by Defendant Sellers and Riggins is that he was moved from one cell to another and forced to use a high bunk, when he had a low bunk pass.  He admits that he only had to do this for a few days.  He also contends that evidence that the shank was planted on him was that it was kept in his property, when that was "an idiotic place to hide a weapon."

Response: The disciplinary report you received on 07/26/02, for violation of 1-3 spoken threats, log# 110-021636 has been overturned.  Our decision to overturn the disciplinary report was based on technical errors made in the processing of same.  All

No. 5:04cv123-SPM/AK

necessary adjustments will be made to your inmate file and record.  Based on the above information, your grievance is approved.

    b)    <u>Charging Disciplinary Report dated 07/26/02 (exhibit B)</u>

Defendant Sellers wrote that he approached Plaintiff's cell on this date and observed him to be laying on his mattress on the floor.  When Sellers told him to put the mattress back on the bunk, Plaintiff allegedly told him, "Mother fucker the first chance I get I'm gonna put a piece of steel through your ass."  The Disciplinary Hearing Worksheet shows that a hearing was held on July 30, 2002, and the Plaintiff was present.  The team found him guilty and he was given DC for 30 days and a loss of gain time of 90 days.

## II.    Standard of Review

A district court should grant summary judgment when, "after an adequate time for discovery, a party fails to make a showing sufficient to establish the existence of an essential element of that party's case."  <u>Nolen v. Boca Raton Community Hospital, Inc.</u>, 373 F.3d 1151, 1154 (11th Cr. 2004), *citing* <u>Celotex Corporation v. Catrett</u>, 477 U.S. 317, 322 (1986).  All issues of material fact should be resolved in favor of the Plaintiff or non-moving party before the Court determines the legal question of whether the defendant is entitled to judgment as a matter of law under that version of the facts.  <u>Durruthy v. Pastor</u>, 351 F.3d 1080, 1084 (11th Cir. 2003); <u>Skrtich v. Thornton</u>, 280 F.3d 1295, 1299 (11th Cir. 2002).   The Plaintiff has the burden to come forward with evidentiary material demonstrating a genuine issue of fact for trial.  <u>Celotex</u>, 477 U.S. at 322-23.  Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material

**No. 5:04cv123-SPM/AK**

facts, <u>Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation</u>, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is insufficient.  There must be such evidence that a jury could reasonably return a verdict for the party bearing the burden of proof.  <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 251, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986).  "For factual issues to be considered genuine, they must have a real basis in the record."  <u>Mize v. Jefferson City Board of Education</u>, 93 F.3d 739, 742 (11th Cir. 1996).

"Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' "  <u>Owen v. Wille</u>, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998), *quoting* <u>Celotex</u>, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(c), (e)).  The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c).  <u>Owen v. Wille</u>, 117 F.3d at 1236; <u>Celotex</u>, 477 U.S. at 324, 106 S. Ct. at 2553.

While a moving party is not required to support his motion for summary judgment with affidavits, <u>Celotex</u>, <u>supra</u> at 323, the facts stated in uncontradicted affidavits or other evidentiary materials must be accepted as true for purposes of summary judgment.  <u>Gauck v. Meleski</u>, 346 F.2d 433, 436 (5th Cir. 1965).

**No. 5:04cv123-SPM/AK**

### III.    Defendants Relevant Rule 56(e) evidence

a)    <u>Inmate Population Information Detail</u>

Plaintiff has been in custody since 1/18/1996, he is presently in close custody at

Jefferson Correctional Institution with a release date of April 20, 2022.

b)    <u>Inmate Disciplinary Actions as of 1/04/07</u>

His list shows that as of January 15, 1997, Plaintiff received six DR's at New

River CI, three at Tomoka CI, eleven at Washington CI, and three at Everglades CI,

mostly for disobeying orders and disorderly conduct.

The DR's Plaintiff contends were fabricated occurred at Washington CI and are

as follows:

08/15/99 Fighting
09/10/00 Disobey Regulations
02/19/02 Disorderly Conduct
02/28/02 Disorderly Conduct
03/13/02 Spoken Threats
04/11/02 Disobey Regulations
07/10/02 Disorderly Conduct
07/10/02 Disorderly Conduct
07/20/02 Disorderly Conduct
07/27/02 Disobeying Order
07/31/02 Possession of weapon

### IV.    Plaintiff's Responses (docs. 104, 113, 124)

### A.    Response in Opposition (doc. 104)

1)    <u>Inmate Requests and Grievances about a transfer (exhibit A)</u>

On April 14, 2002, Plaintiff inquired about his requested transfer and whether he

had to wait for a year "clean" without any DR's before becoming eligible.   He was told

yes, he would have to wait, and he asked if there would be any consideration because

**No. 5:04cv123-SPM/AK**

Defendant Riggins was retaliating against him "as reason for my recent slew of DR?"
He was told, "There is no evidence of any retaliation."

Plaintiff filed an Informal Grievance on May 1, 2002, complaining that he should
have been allowed a transfer in September or October 2001, and that "I set forth
reasons for you to cast a doubtful eye upon my 4 recent D.R's." **He made no mention
of either Defendant or any particulars about the 4 DR's he contends were
fabricated nor does he say the word "retaliation." (Exhibit A, p. 3).** He was told
that transfers are not automatic simply because an inmate is DR free.  He appealed this
to the Warden, requesting that an investigation be made into the DR's or that he be
transferred. **Again, he does not name any Defendant nor does he specify the
bases of his retaliation claim nor any particulars as to which DR's and why he
claims they should be "void."** The response was that he was not eligible for a
transfer because he had received four DR's since February.

On July 2, 2002, he appealed to the Warden stating "I earned my transfer and I
want it," which was returned without processing because the issue had been previously
addressed.  He wrote another appeal on July 2, 2002, to the Warden complaining that
Ms. Butler (who responded to the Inmate Request on April 14, 2002, and the Informal
Grievance on May 1, 2002) should investigate the circumstances as to his retaliation
claim. **No persons were named and no facts provided.** The appeal was returned
without processing because the issue had been previously addressed.  He appealed to
the Secretary on June 17, 2002, but it was returned as "not accepted as a grievance of
a sensitive nature."

**No. 5:04cv123-SPM/AK**

2)    "Proof" of physical injuries (exhibit B, pp. 11-96)

Plaintiff has submitted 85 pages of grievances filed at Florida State Prison from November 2002, to March 2004, which he contends support his claim of physical injuries resulting from the actions of the Defendants.  The grievances concern his complaints about needing an extra blanket (pp. 12-19), about exhaust fans creating cold temperatures in the unit (pp. 19-28), about shower procedures (pp. 29-52, 66-71), about laundry procedures (pp. 53-60), about talking policies (pp. 61-65), staff shortages (pp.72-78); cleaning supplies (pp. 78-86); towels (pp.87-91); and stamps (pp. 92-96).

3)    Grievances concerning Riggins (exhibit C, pp. 97-110)

Dated February 24, 2002, Plaintiff complained that Officer Riggins was retaliating against him for filing a grievance about needing paper towels to wipe the toilet seat. Plaintiff stated that Riggins called him a "piece of shit" and threatened to put him somewhere.  He contends that Captain Coker was present.  He contends that he was denied a meal and refused grievance forms.  The response was that Riggins was interviewed and reported that Plaintiff was being disorderly and the DR was accurate. Captain Coker was not on duty on the date this allegedly occurred.  (pp. 98-100).

Plaintiff appealed to the Secretary demanding an investigation claiming that he had identified witnesses which had not been interviewed and he was only weeks away from being transferred when all of these reprisals began.  (pp. 101-102).  The response was that upon investigation it was concluded that Plaintiff had already eaten when he was called into Riggins' office to discuss the toilet paper/paper towel issue and before

No. 5:04cv123-SPM/AK

Riggins could discuss the issue Plaintiff became disorderly.  He was therefore placed in administrative confinement and the grievance was denied. (p. 103).

Plaintiff appealed the denial to the Secretary again complaining that inmate witnesses were not interviewed nor was Ms. Ewing asked about the incident which would have revealed that Riggins lied.  The response was that he had not mentioned Ewing before and there was not sufficient information provided to warrant further inquiry.

Plaintiff filed a Formal Grievance dated March 12, 2002, which was again denied after Capt. Riggins was interviewed and denied falsifying any DR's.  (pp. 105-107).  He appealed this to the Secretary on March 28, 2002, complaining that Riggins was a liar and that he did not receive more than one roll of toilet paper per week.  The response was that inmates would be given an additional roll of toilet paper if they needed one.  (p. 108).

Another formal grievance was filed on March 25, 2002, complaining that Riggins was falsifying DR's against him, which was denied, after interviewing Riggins.  (pp. 109-110).

4)   <u>Inmate Request and Grievances (exhibit D, pp. 112-118)</u>

Plaintiff requested a detailed explanation as to why DR #110-021636 was overturned. [This request is dated June 15, 2003].  The final response was only that it was overturned for "technical errors."  (pp. 112-118).

**No. 5:04cv123-SPM/AK**

5)     Appeal to Office of Secretary dated July 29, 2002 (exhibit E, p. 120)

Inmate Grievance Part A: On 7/28/02 I was delivered two more fabricated D.R.s. One was previously set up when Sgt. Sellers illegally ordered Hale to a top bunk even when advised of his having a low bunk pass. "The D.R. is based on me having my mattress on the floor. What a set-up. The other is me telling Sarge I'm going to put some steel in him. Unquestionably a set up to them now finding a shank on me or in my area. But still you make me stay at Washington C.I.

Response: Your request for administrative appeal is in non-compliance with Chapter 33-103, Inmate Grievance Procedure. You did not provide this office with a copy of the institution's response to a formal grievance at the institutional level when appealing disciplinary action. If you did in fact submit an appeal to the Warden within 15 days of the date of the disciplinary hearing and this appeal to the Central Office was receipted within 15 days of the date of the warden's response you are allowed an additional 15 days from the date this response was mailed (date stamped on upper left corner), to submit a new appeal to this office with a copy of the warden's response attached. You should also attach a copy of this response to your refiled appeal. This office will not review the disciplinary action if you have not filed your appeals within the time frames established by rule.

Each disciplinary report is a separate issue and must be grieved as such, also initiated at the appropriate level.

Based on the foregoing information, your grievance appeal is being returned.

No. 5:04cv123-SPM/AK

**B.      Statement of Facts (doc. 113)**

Plaintiff contends there are numerous factual issues in dispute as supported by attached affidavits and grievances:

1.  Disciplinary Report dated February 19, 2002 (exhibit A)

Defendant Riggins wrote that he observed Plaintiff sitting on a bench when Plaintiff began yelling at unidentified inmates going to the evening meal.  He ordered Plaintiff to stop yelling, he refused, and a DR was written and Plaintiff was placed in administrative confinement.  Riggins stated that no other staff witnessed the incident.

2.  Affidavit of William A. Moody, Jr.  (exhibit B)

Moody attests that he saw Plaintiff sitting on the bench on February 19, 2002, and asked him if he was in trouble.  Plaintiff told him that Riggins had called him a piece of shit and threatened to put him somewhere where he could not write so many grievances.  He also wrote that he had witnessed "security staff" harassing Plaintiff, particularly one time when Sgt. Pallazollo forced Plaintiff to cut his hair shorter than regulation.  Moody also attests that Riggins had harassed him one time by calling him names and threatening to lock him up for asking about notarizing a legal document.

3.  Affidavit of Michael King (exhibit B)

King attests that he heard Ms. Ewing call for Plaintiff on February 19, 2002, and "knew" that this was about all the grievances Plaintiff had been writing.  King witnessed the maintenance supervisor and Assistant Warden Johnson complain to Plaintiff about his grievance writing.

**No. 5:04cv123-SPM/AK**

4.  <u>Affidavit of Joaquin Cisneros (exhibit B)</u>

Cisneros attests that he heard Ms. Ewing call for Plaintiff on February 19, 2002, and saw him sitting on the bench and "figured it was because of his grievances."

5.  <u>Affidavit of Tommy Pleasant (exhibit B)</u>

Pleasant attests that he heard Ms. Ewing call for Plaintiff and "figured" it was about his grievances because he had filed several about the prison conditions.  He knew that "officers" had harassed Plaintiff before, but he did not see what happened with Riggins that night.

6.  <u>Affidavit of Jorge Marcano (exhibit B)</u>

Marcano attests that he heard Ms. Ewing call for Plaintiff and he thought it was about the grievances because Plaintiff had written many before and had been harassed by having to get a haircut shorter than regulation.

7.  <u>Affidavit of Matthew K. Glunt (exhibit B)</u>

Glunt was Plaintiff's cell mate on July 10, 2002, and was assigned to the upper bunk.  He and Plaintiff were sitting on their bunk awaiting count procedure when Officer Lane pointed to Plaintiff in a downward thumb motion that he should get his feet off his locker.  Plaintiff did this and there was no verbal exchange between them.  Lane returned and told Plaintiff he was going to see Riggins.  Lane returned and told Glunt to help him pack Plaintiff's property because Plaintiff was going to confinement.  Later, Sgt. Kirkland came to Glunt for his statement about the incident, but told Glunt that he could either refuse to make a statement or be locked down with Plaintiff.  Glunt did not

No. 5:04cv123-SPM/AK

voluntarily refuse to make a statement, but he did not want to be put in confinement.  He was later told by Lane that Plaintiff was in confinement for being a jail house lawyer.

8.  Affidavit of Lawrence Simpkins (exhibit B)

Simpkins attests that Riggins and others have falsified DR's against him for writing grievances.

9.  Affidavit of Christopher Miller (exhibit B)

Miller attests that he was forced on hunger strikes and became suicidal after he was retaliated against and placed on confinement by false DR's and threats of rape and murder.  His psychiatrist did not want him to return to Washington CI because of the retaliation practiced there.  He heard "staff" say that Plaintiff  was a marked man.

10. Informal Grievance dated 2/26/02 (exhibit C)

Plaintiff wants Sgt. Tharp to testify on his behalf that Riggins abuses him and the DR for yelling was false.  The response is that Tharp did not witness the incident.

11. Formal Grievance dated March 12, 2002 (exhibit C)

Plaintiff complains that Asst. Warden Johnson was the first to threaten him for filing grievances, but Riggins, too, was part of the "hostilities," and Tharpe was present and he and Riggins are both lying.  The response was that both Johnson and Riggins denied any threats and reaffirmed their prior statements that Plaintiff was in confinement because of disorderly conduct not because of his grievance filing.  Tharpe reiterated that he was not present.  Plaintiff appealed this step to the Secretary, who denied it.

12.  Grievance of Reprisal dated February 24, 2002 (exhibit D)

**No. 5:04cv123-SPM/AK**

This grievance concerns Capt. Riggins, the encounter about the paper towels, and Riggins' alleged statement that he would put Plaintiff somewhere where he would not have to worry about him.  Plaintiff also alleged that Capt. Coker witnessed the incident.  On March 11, 2002, a response was made that Riggins stood by his disciplinary report because Plaintiff was yelling and being disorderly, and Capt. Coker was off duty on the date in question.

13.  Inmate Requests to Chaplain Luther dated March 14, 2002 (exhibit E)

Plaintiff asked the chaplain if he recalled the incident and talking to Coker and Riggins.  The chaplain responded that he recalled talking to Riggins only.

Plaintiff asked again if the chaplain recalled that it was about 4:00 that he was in Captain Riggins office, talked for about ten minutes, talked to Sgt. Tharp for a few minutes, talked to Plaintiff for a few minutes, and then left about 4:30.  The chaplain responds that the time frame was about right.

Plaintiff attempted to supplement his prior appeal to add that the chaplain should have been listed as a witness to the incident and interviewed, which proves the DR was falsified.  The response was that there were no provisions for supplementing pending appeals that contain no relevant information.  He re-submitted the grievance explaining why the information from the chaplain was not included in the original appeal, and the appeal was again denied.

14)  Disciplinary Report dated 02/28/02 by J. Land (exhibit F)

Land wrote Plaintiff up for yelling at other inmates.

15)  Grievance of Reprisal dated April 18, 2002 (exhibit G)

No. 5:04cv123-SPM/AK

Plaintiff appealed to the Secretary claiming that Sgt. Nicewonder told him he was getting all the DR's because he was writing grievances and that he would be getting more on April 8th or 9th.  In response, the appeal was determined not to be a grievance of reprisal and Nicewonder denied telling him this.

16)    Affidavit of Charles Ward (unsworn)(exhibit h)

Ward states that he asked Officer Lane why Plaintiff was locked up and the officer told him it was because Plaintiff filed too many grievances and the officers were going to get him for it.

17)    Affidavits of Lawrence Simpkins (exhibit I)

Simpkins witnessed that Officer McKenzie failed to read Plaintiff the disciplinary report and have him sign the witness form.  He also attests that he heard Riggins threaten Plaintiff with doing all 21 years "back here."

18)    Affidavit of Marcus Harris (unsworn) (exhibit J)

Harris attests that he heard Officer Hewett tell Plaintiff that Riggins sent his best and asked if he needed more paper towels to wipe his ass with.

19)    Grievances and Appeals about lie detector tests (exhibit K)

20)    Grievance concerning DR's on 7/10/02 and 7/20/02 (exhibit L)

Although Plaintiff wrote "Emergency Grievance" in Part A of the form and complained that he was being issued fabricated DR's, the Secretary returned the grievance without action, as not being an emergency or of a sensitive nature.


21)    Grievances (exhibit M)


**No. 5:04cv123-SPM/AK**

These grievances do not appear to be concerned with the DR at issue, except in a general complaint about all the DR's he had received and which was returned for untimeliness and failure to comply with grievance regulations which requires that each DR be treated separately.

## C.      Final Response (doc. 124)

Plaintiff complains that the Defendants who responded to his discovery requests perjured themselves, as well as the persons who responded to his written deposition questions.  He also complains that the Court hindered him from propounding all the discovery he needed.  Plaintiff did not attach the responses he contends were perjured and the issues of discovery which were presented to the Court have all been decided and will not be revisited. The only relevant document attached to the response is the following as the other papers are copies of motions and other papers concerning discovery which are already in the Court file.

1.  Grievance Approval Action Form dated May 20, 2003 (exhibit E)

This form contains the reason the DR of July 26, 2002, was overturned:

Inmate requested the vide be viewed [illegible] his witness statement.
There is no indication that the video was reviewed by the hearing team nor
is there a reason recorded for not doing so.  Overturn Dr Log # 110
021636 for 1-3 dated 7/26/02.


The action taken by staff to carry out the approval:

DR # 110-021636 for (1-3) threats on 7-26-02 was removed from the files
and database.

**No. 5:04cv123-SPM/AK**

**V.     Analysis**

a)     <u>Exhaustion</u>

The DR at issue (#110-021636) dated July 26, 2002, Violation Code 1-3 "Spoken Threats," resulted from an incident between Plaintiff and Defendant Sellers when Sellers observed Plaintiff laying on his mattress on the floor and he told him to get up and put his mattress back on his bunk.  Allegedly Plaintiff told Sellers, "Mother fucker the first chance I get I'm gonna put a piece of steel through your ass."  (Doc. 60, Exhibit B).  A hearing was held and Plaintiff was ordered to disciplinary confinement. (Doc. 60, Exhibit B).

Plaintiff filed a grievance appeal to the Secretary on July 29, 2002, complaining that Defendant Sellers issued him a false DR about his mattress being on the floor and threatening to put steel in him, which Plaintiff contends was a set up.  The appeal was returned on August 1, 2002, because no formal grievance was attached.  (Doc. 104, Exhibit E, p. 120).

Grievances alleging retaliation (grievances of reprisal) do not have to be submitted at the institutional level, this step may be skipped, and a formal grievance made directly to the warden.  Fla. Admin. Code Rule 33-103.005; 103.006.  Grievances of reprisal may also be filed directly with the Office of the Secretary, but if this route is taken, *i.e.* a direct appeal is made to the Secretary, the following procedures must be employed:

> (a) Emergency grievances, grievances of reprisals, or grievances of a sensitive nature may be filed directly with the Office of the Secretary using the Request for Administrative Remedy or Appeal, Form DC1-303. The following shall apply:

**No. 5:04cv123-SPM/AK**

> 1. The inmate shall state at the beginning of Part A of Form DC1-303 that the grievance concerns either an emergency, or is a grievance of a reprisal, or a grievance of a sensitive nature.
> 2. The inmate must clearly state the reason for not initially bringing the complaint to the attention of institutional staff and by-passing the informal and formal grievance steps of the institution or facility.
> 3. The inmate may forward grievances of these three types to the Office of the Secretary in a sealed envelope by following the procedure set out in paragraph 33-103.006(8)(d), F.A.C.  Fla. Admin. Code Rule 33-103.007(6)(a).

Plaintiff did not note on the grievance about DR #110-021636 issued on July 26, 2002, that it was a Grievance of Reprisal or Emergency Grievance, and the grievance was properly returned.  On August 1, 2002, Plaintiff was apprised that his appeal was not being treated by the Secretary as a grievance of reprisal and at that time he had 15 days from the date of the Secretary's response to re-file it.  Plaintiff knew how to file grievances of reprisal because he had filed one previously with good result, i.e. an investigation ensued.  (See Doc. 113, Exhibit D).  Thus, Defendants are correct that Plaintiff did not exhaust the administrative process with regard to the DR at issue. However, in addition to this finding the undersigned has also examined carefully the merits of the retaliation claim and finds that the claim should be dismissed on this ground as well.

      b)    <u>Retaliation</u>

**No. 5:04cv123-SPM/AK**

A claim that a plaintiff was penalized for the exercise of a specific constitutional right is properly considered under the First Amendment.  See Thaddeus-X v. Blatter, 175 F.3d 378, 387 (6th Cir. 1999) (en banc).  It is well settled law that the First Amendment protects inmates from retaliation by prison officials for filing administrative grievances and lawsuits.  Green v. Mowery, 212 Fed. Appx. 918, 919 (11th Cir. 2006); Redd v. Conway, 160 Fed. Appx. 858, 862 (11th Cir. 2005).  To state a retaliation claim, a plaintiff must establish three elements: (1) that his speech or act was constitutionally protected; (2) that the defendants' retaliatory conduct adversely affected the protected speech or act; and (3) that there is a causal connection between the retaliatory actions and the adverse affect.  Bennett v. Hendrix, 423 F.3d 1247, 1250 (11th Cir. 2005).  The Eleventh Circuit has adopted an objective test as the standard for determining whether there has been an adverse affect.[2]  Id., at 1251.  Under this analysis "a plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter 'a person of ordinary firmness' from the exercise of First Amendment rights."  Id., at 1250, quoting Constantine v. Rectors and Visitors of George Mason Univ., 411 F.3d 474 (4th Cir. 2005).  This test is applicable to prisoners' claims of retaliation as well.  Bennett, supra at 1253, n.6.

A plaintiff bears the burden of proof on all three elements.

Plaintiff has carried his burden as to the first element, he clearly has a First Amendment right to file grievances.  See Green, supra and Redd, supra.  However, as

---

[2]  A minority of circuits apply a subjective test under which the Plaintiffs have to show that they were actually chilled in the exercise of their First Amendment rights, but the Eleventh Circuit specifically declined to adopt this standard in favor of the majority view.  Bennett, supra at 1251.

**No. 5:04cv123-SPM/AK**

to the second <u>Bennett</u> requirement, Plaintiff must show that the Defendants' conduct resulted in something more than a "de minimis inconvenience" to the exercise of his First Amendment rights.  <u>Bethel v. Town of Loxley</u>, 221 Fed. Appx. 812, 813 (11th Cir. 2006).  Negative statements in general made by a defendant without threat of physical violence or any other consequence would not likely deter a person of "ordinary firmness" from exercising his rights.  <u>Wood v. Valentino</u>, 2007 WL 1427045 (M.D. Fla. 2007).  However, a threat of "something drastic" if a prisoner did not stop filing grievances said by someone in a position of significant authority is sufficient to deter a person of ordinary firmness from filing grievances.  <u>Pittman v. Tucker</u>, 213 Fed. Appx. 867, 871 (M.D. Fla. 2007).

Under the facts presented, the "something drastic" alleged by Plaintiff was that Riggins would have him put in confinement.  Obviously, this threat did not deter Plaintiff because he filed **numerous** grievances after the February 16, 2002 incident.  In fact, he filed grievances **about** the February 16, 2002, incident.  (Doc. 104, Exhibit C; Doc. 113, Exhibit D).  Equally obvious is that the threat was rather weak since the allegedly fabricated DR that resulted in the confinement complained about occurred **five** months later.  If Riggins were serious about sending Plaintiff somewhere else, why would he need someone else to fabricate DR's for him?  Why not plant a shank in Plaintiff's property back in February and have him confined then?  Further, if Riggins whole motivation was to have Plaintiff moved somewhere else why would Riggins fabricate DR's right at the time Plaintiff was eligible for and was seeking a transfer to another institution.  Given Plaintiff's grievance history and the vague nature of the threat, it does

**No. 5:04cv123-SPM/AK**

not appear that Riggins actions deterred Plaintiff was asserting his First Amendment rights and Plaintiff fails to carry his burden on this element of a retaliation claim.

Further, as to the third requirement, a causal link, conclusory allegations of retaliation without "some facts" that would indicate that the retaliatory act (fabricating DR's) was in retaliation for filing grievances is not sufficient. See White v. Thompson, 2007 WL 2324613 (S. D. Ga. 2007). See also Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003) (prisoner may establish retaliation by "demonstrating that the prison official's actions were `the result of his having filed a grievance concerning the conditions of his imprisonment.'"). The allegations must be more than "general attacks" upon a defendant's motivations, Plaintiff must produce "affirmative evidence" of retaliation from which a jury could find that plaintiff had carried his burden of proving the requisite motive. Crawford-El v. Britton, 523 U.S. 574, 600, 118 S.Ct. 1584, 1598, 140 L.Ed.2d 759 (1998) (citations omitted). A prisoner does not automatically cast doubt upon an institutional decision, nor is the decision "subject to exhaustive challenge," solely because he was engaged in a First Amendment right. Adams, 784 F.2d 1077, 1082 (11th Cir. 1986); Adams v. James, 797 F.Supp. 940, 949 (M.D. Fla. 1992). Even though prison officials do not have the authority to prohibit inmates from filing grievances it does not follow that every time an inmate files a grievance the act of doing so renders the exercise of prison authority suspect. See Adams, 784 F.2d at 1082. Indeed, while mindful that a plaintiff may not be held to a heightened burden of proof, see Crawford-El, 523 U.S. at 580-86 (holding that in retaliation claim prisoner could not be required to show "clear and convincing" evidence of defendant's unconstitutional

motives), courts should approach prisoner claims of retaliation "with skepticism and particular care" due to the "near inevitability" that prisoners will take exception with the decisions of prison officials and "the ease with which claims of retaliation may be fabricated." Dawes v. Walker, 239 F.3d 489, 491 (2nd Cir. 2001), impliedly overruled in part on other grounds by Swierkiewicz v. Sorema N.A., 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

Under the present facts and based on the evidentiary materials provided to the Court by the parties, Plaintiff **freely** utilized the grievance procedures available to him, but there were no inordinate number of grievances against Riggins, no truly serious or sensitive issues raised in these grievances, that would cause a reasonable corrections employee to want to retaliate. Plaintiff filed a grievance against Riggins immediately after the toilet paper incident (February 24, 2002) and mentioned Riggins as an "abuser" in another grievance about the same incident on February 26, 2002. (See Doc. 104, Exhibit C; Doc. 113, Exhibits C and D). He mentioned Riggins in an Inmate Request dated April 14, 2002, (doc. 104, Exhibit A), and filed a grievance against him on May 4, 2003, (Doc. 60, Exhibit A), but this last grievance was nearly a year after the fabricated DR at issue. Thus, at the time Defendant Sellers allegedly fabricated the DR in July 2002, because of Plaintiff filing grievances against Riggins, Plaintiff had filed only one–and that was the one where Riggins allegedly first made a threat to him. Grievances are part of the corrections system and dealing with them and the prisoners who file them are part of a corrections officer's daily work duties. The Court is simply not convinced from the circumstantial evidence presented that Defendant Riggins'

threat, taking all Plaintiff's allegations about the incident in February 2002 as true, was prompted by Plaintiff's grievance filing, was meant to inhibit his grievance filing or was an act of retaliation or an indication of retaliation to come.  None of the inmates who provided affidavits on Plaintiff's behalf were certain that Defendant Riggins wanted to inhibit Plaintiff from filing grievances, they "figured" that was the cause of Riggins' actions, but only because they knew Plaintiff wrote a lot of grievances.  None of them described any other incidents between Riggins and Plaintiff, other than the one which occurred following the toilet paper grievance, although several of them recalled Plaintiff getting his hair cut overly short as some indication of harassment, but no one stated that Riggins was involved in this incident.  Further, there have been absolutely no facts to support a connection between Riggins and Sellers such that Sellers would fabricate DR's and then plant evidence at Riggins request.  Plaintiff contends that the number of DR's he received during this time period at Washington CI, and the fact that he had been DR free for a year and a half prior to the February 16, 2002, incident, and for three years after he was transferred from Washington CI is proof that he was being retaliated against.  Certainly, he received more DR's at Washington than at New River, Tomoka, and Everglades, but looking at his history, he had a history of receiving similar types of DR's (disorderly conduct and disobeying orders) and had received multiple DR's in a month's period of time before : 4 in July 1997 at New River; 2 in March 1999 at Tomoka; 2 in December 2005 at Everglades.  Thus, the fact that Plaintiff received 2 DR's in February 2002, 1 DR in March, 1 in April, and 5 in July 2002 at Washington is not that significant a change as to suggest a conspiracy to fabricate these charges. Thus, the

**No. 5:04cv123-SPM/AK**

undersigned finds that Plaintiff has failed to carry his burden of proof on the third

<u>Bennett</u> element as well (causation).

     c)    <u>Physical Injury and compensatory damages</u>

Although Plaintiff argues that close confinement causes mental illness, he has

neither alleged nor shown any such injury.  He is correct that physical injury must be

construed broadly and may include mental or emotional damages, but these injuries

must be demonstrable, that is, some proof must be shown that emotional injury did in

fact occur.  <u>Carey v. Piphus</u>, 435 U.S. 247, 264 (1978).

   In the absence of evidence of actual injury, Plaintiff is entitled to nominal

damages only.  <em>Id.</em>  at 266-67.  Compensatory damages may not be awarded based on

the "abstract value" or "importance" of constitutional rights.  <u>Memphis Community</u>

<u>School District v. Stachura</u>, 477 U.S. 299, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986).

Plaintiff has offered no medical records to show treatment for mental illness resulting

from the isolation and deprivation he alleges was caused by the fabricated DR's and

resulting disciplinary confinement.  He asserts that he was placed on suicide

observation twice (on August 14, 2002, and October 25, 2002), but he offers no facts

about this, no records of these incidents (and surely there must have been some), and

never states affirmatively that he was placed on this observation status because of

Defendants' actions with regard to the fabricated DR's.  (Doc. 60, p.11).  There must be

causation, some personal acts attributed to each defendant, before liability for

constitutional violations can be imposed.  <u>See Hale v. Tallapoosa County</u>, 50 F.3d 1579,

1582 (11 Cir. 1995); <u>Zatler v. Wainwright</u>, 802 F.2d 397, 401 (11 Cir. 1986).   Plaintiff

had considerable leeway in propounding discovery and he neither sought nor otherwise provided to the Court his medical records that would show he was placed on confinement following these DR's and ended up suicidal.  If there are no injuries to compensate for, then no compensatory damages may be awarded.

       C)      <u>Due Process, Equal Protection, Denial of Medical Care</u>

Plaintiff has not provided sufficient facts to support any claim that Defendant Riggins or Sellers denied him due process with regard to the DR proceedings at issue.

The procedural requirements for a disciplinary hearing are three-fold: (1) advance written notice; (2) a written statement of the reasons for the disciplinary action taken; and (3) the opportunity to call witnesses and present evidence.  <u>Wolff v. McDonnell</u>, 418 U.S. 539, 556, 94 S. Ct. 2963, 2974, 41 L.Ed. 2d 935 (1974); <u>Young v. Jones</u>, 37 F.3d 1457, 1459-60 (11th Cir. 1994); <u>Bass v. Perrin</u>, 170 F.3d 1312, 1318 (11th Cir. 1999).

Although he loosely asserts that no one interviewed his witnesses and the officers that were present lied when asked about the incident, he has not alleged that Defendant Riggins or Sellers were involved in the investigation, prevented the witnesses from being interviewed, or caused Officers Tharpe or Coker to lie that they were not present when they were.  The DR at issue was overturned because the reviewing authority determined that proper procedures were not employed.  The DR was expunged from Plaintiff's file.  Since Plaintiff has alleged no injury from this "violation," there appears no further relief that could be afforded to him.

**No. 5:04cv123-SPM/AK**

Likewise, Plaintiff has asserted no facts to support an equal protection claim.  "To establish an equal protection claim, a prisoner must demonstrate that (1) "he is similarly situated with other prisoners who received" more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest such as race."  Jones v. Ray, 279 F.3d 944, 946-947 (11th Cir. 2001), *quoting* Damiano v. Fla. Parole & Prob. Comm'n, 785 F.2d 929, 932-33 (11th Cir.1986) (*per curiam*).  Plaintiff has not shown that he was discriminated against based upon his race, gender, or some other constitutionally protected interest.  The basis for his alleged discrimination by Defendants is that he wrote grievances.  He has not alleged that other inmates who wrote grievances were treated more favorably than he was nor provided any facts about this claim.

Finally, he claims denial of medical care, but there are no facts in the amended complaint regarding this claim.

Consequently, these claims, too, must fail.

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendants' Motion for Summary Judgment (doc. 83) be **GRANTED**, and Plaintiff's amended complaint (doc. 60), be **DISMISSED** for failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997(e) and for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2), and that the order adopting this report and recommendation direct the clerk of court to note on the docket that this cause was dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

**IN CHAMBERS** at Gainesville, Florida, this  _**20**_$^{th}$ day of February, 2008.


**No. 5:04cv123-SPM/AK**

_**s/ A. KORNBLUM**_
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**

<u>**NOTICE TO THE PARTIES**</u>

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

**No. 5:04cv123-SPM/AK**